**IN THE UNITED STATE BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**IN THE MATTER:**

| | |
|---|---|
| CARLOS MEDINA CENTENO<br>**DEBTOR (S)** | CASE NO.: 16-04961 (**MCF**)<br><br>CHAPTER 13 |
| FIRSTBANK Puerto Rico<br>**MOVANT** | |
| CARLOS MEDINA CENTENO<br>Alejandro Oliveras Rivera<br>José Carrión Morales<br>Trustee - Chapter 13<br>**RESPONDENT'S** | (x) Opposition to plan confirmation under Title 11 §1325(a) (5) & 361 on Plan Confirmation, Adequate Protection and Equal Monthly Payments |

**MOTION OBJECTING THE CONFIRMATION OF THE PLAN**

**TO THE HONORABLE COURT:**

COMES NOW, Movant **FIRSTBANK Puerto Rico**, through its undersigned attorney and very respectfully states and preys:

**I. INTRODUCTION.**

1- The jurisdiction of the Honorable Court is ascertained under Title 28 USC§1334, Title 28 USC §157, Title 11 USC §361 and 11 USC §1325(a) (5) (B) (iii), on *Adequate Protection* and Title 11 USC §1325(a) (5) (B) (iii) on *Confirmation of Plan,* Title 11 USC §1326(a)(1) on *Pre-Confirmation Adequate Protection,* 11 USC §1325(b) (6) on *Feasibility Test or sufficiency funding of a proposed plan.* See Lundin, Keith M.; on Chapter 13 Bankruptcy: Chapter 5, at §5.56 on *Feasibility.*

**II. FACTS.**

2- Movant standing is ascertained as it filed on June 28, 2016, a secure Lien claim holder on a personal security agreement with the outstanding debt of $15,559.78, under account

no. 6604, on a Dodge Ram with a "replacement value"[1] under the Blue Book Suggested retailed value of **$20,100 under Clean Retail or $16,675 under Clean Trade - In.** *Clm Reg no. 1*

3- Under the plan dated June 21, 2016 Debtor(s) provide for the payment "in full" of Movant secure lien claim, with $120.00 dollars as pre- adequate protection; with the post- confirmation payments starting in the 25th month. This is unacceptable under BAPCPA 2005. *Bkcy Dck 2*

**III. LEGAL BASIS.**

Bankruptcy L Rule 9013-2 (a) specifically provides, that except as provided in subsection (b) of this LBR, any motion or response thereto must be accompanied by supporting memorandum that contains the points and authorities in support of the party's position, together with any affidavits or documents in support thereof.

4- Section 1325 sets forth the requirements for confirmation of a chapter 13 plan. Section 1325 (a) provides that the court shall confirm a plan *if*:

(5) With respect to each allowed secured claim *provided for by the plan* -

(A) The holder of such claim has accepted the plan;

(B) (i) the plan provides that -

(I) The holder of such claim retain the lien securing such claim until the earlier of -
(aa) the payment of the underlying debt determined under nonbankrutpcy law; or

---

[1] (a) Amended Code Sections: §506 (a): Secured claims shall be determined under §506 (a) based on the replacement value of the collateral as of the date of the filing without deduction for cost of sale for cost of sale or marketing. 2006 Norton Quick - Reference Pamphlet: Bankruptcy Code and Rules: Summary of BAPCA

(b) "This amendment overturns those opinions that had permitted valuations based upon wholesale valuations, including the Supreme Court's *Rash* decision, by requiring retail values to be use in chapter 7 and 13, at least as to property acquired by the debtor for personal, family and household use. This retail value is to take into account the age and condition of the property at the time of value determination." DD. On Valuations: Hon. William Houston Brown and Lawrence R. Ahern III, on 2005 Bankruptcy Reform Legislation with Analysis. Pg. 69

(c) Merchant: the term merchant is defined as "One who is engaged in the purchase and sale of goods; a trafficker, a trader". *Fischbach Brewing Co. vs. City of St. Luis, 231 Mo. App. 793 95 S.W. 2d. 335.* Black's Law Dictionary

(bb) the discharge under 1328: and

(II) *If* the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extend recognized by the applicable nonbankrutpcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and -

(iii) *If*-

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments ***shall* be in equal monthly payments**; and

(II) The **holder of the claim is secured by a personal property**, the amount of such **payments *shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan*.**

(C) The debtor surrenders the property securing such claim to such holder.

5- Likewise, Section 1326(a) (1), as amended, provides that unless the Court order otherwise, the debtor(s) *shall* commence making payments not later than 30 days after the date of the filing of the plan or the order of relief, whichever is earlier, in the amount -

(A) Proposed by the plan to the trustee;

(B) ....

(C) That provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extend the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, deducting the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.

6- Section 1326(a) (2) provides that - A payment made under paragraph (1) (A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable…

> (b) Before or at the time of each payment to creditors under the plan, there shall be paid -
>
> (1) Any unpaid claim of the kind specified in section 507 (a)(2) of this title;
>
> (2) If a standing trustee appointed under section 586 (b) of title 28 is serving in the case, the percentage fixed for such standing trustee under section 586 (e)(1)(B) of title 28;…

7- Since October 17, 2006 the Bankruptcy Act became amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, [best known as BAPCPA 2005]. And, back in 1992, the Supreme Court of the United States ruled in Connecticut Nat'l Bank vs. Germain, 503 US 249 (1992) in interpreting a statute, "courts must presume that a legislature says in a statute what it means and means in a statute what it says". Notice should be taken at this time pertain in reference to the language used by Congress. The verb is in the form of an "imperative verb"; it is not a conditional one. And, it is that *the debtor shall*… not that the debtor *may*.

8- The concept of adequate protection is derived from the Fifth Amendment protection of property interest a enunciated by the Supreme Court. Wright vs. Union Central Life, Ins., 31 US 274 (1940); Louisville Joint Stock Land Bank vs. Radford, 295 US 555 (1935)

9- Although, the Code does not define adequate protection, it does provide a non-exclusive list of samples under §361. The Courts had recognized various methods to provide

adequate protection: (1) *the first method* is to provide periodic cash payments by the estate, to the extent of a decrease in value of the opposing entity's interest in the property involved. In re Yale Express, Inc. 384 F2d. 990 (2d Cir. 1967), (2) *the second method* is the provision of an additional or replacement lien on the property to the extent of the decrease in value of the property involved, (3) *the third method is the granting of an administrative expense priority to the protected entity to the extent of the loss*, (4) *the forth method* gives the parties and the courts flexibility by allowing such other relief as will result in the realization by the protected entity in the value of its interest in the property involved. H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st. Sess. (1977) pp. 338-340

10- To address the "new" provisions under the Code an article was published at The American Bankruptcy Journal. This article specifically address the fact that prior to the amendment of the Code under BAPCPA 2005 *in many instances creditors with a security interest have been required to await payment on their secured claims until after payment of administrative expenses which include unpaid attorney fees.* Further, Chapter 13 plans often provided for payment of the current mortgage, payment of mortgage arrearages, and payment of to a lease and lease arrearages prior to payments on secured claims. This often resulted in uncompounded depreciation of collateral during the pendency of a chapter 13 case. In the worst case scenario, a creditor could wait as long as twenty-four months before receiving distribution in allowed secured claims. Creditor's attempted to address this issue by arguing that adequate protection should apply both pre and post-confirmation in a chapter 13 case. This argument was not well received as adequate protection in most instances is afforded to

a creditor pre-confirmation to ensure that its collateral position is not diminished pending confirmation of a chapter 11 or chapter 13 cases. **To solve this issue, §1325(a) (5) (B) has been amended to provided that adequate protection applies BOTH pre- and post- confirmation in Chapter 13 cases. Periodic payments are required in equal monthly installments and must be sufficient to provide adequate protection to secured creditors commence as soon as practicable after confirmation.** The American Bankruptcy Journal: Article on Selected Creditors Issues under the BAPCP 2005, summer of 2005; by Ricardo I. Kilpatrick & Maria A. Zain, with resulting contributions made by Honorable James D. Gregg, Carrie A. Foster, judicial law clerk to Hon. James D. Gregg, Marla A. Zain, Esq., and John Wright, Esq. * Ricardo I. Kilpatrick, President, P.C. Harvard University (B.A., Economics, 1973)

10- A detailed view of the "new" additions under BAPCA 2005 applicable to secured liens on personal security interests to be paid through the chapter 13 plan calls for an organized analyses of the landmark of cases developed to address the issues in question -

**A. On Pre-Adequate Protection.**

11- Historically, adequate protection in the form of cash payments was just one of the ways that a secured creditor could be protected from the depreciation of its collateral could be protected from the depreciation of its collateral after the filing of the petition and before the confirmation or dismissal of a chapter 13 case. With the BAPCPA amendments to §1326, Congress has required that adequate protection be in the form of cash payments. In re Denton, 370 BR 441 (Bkcy. S.D. Ga. 2007)

12- The new provision under BAPCPA 2005 requires chapter 13 debtors to commence payments under plan within 30 days of the filing of the petition, but allows the debtor to reduce the

payments to the trustee by the amounts the debtor pays directly to lessors of personal property or purchase money secured creditors. The "new" section 1326 (a) (1) provides:

> §1326(a)(1) Unless the Court order otherwise, the debtor(s) shall commence making payments not later than 30 days after the date of the filing of the plan or the order of relief, whichever is earlier, in the amount –
>
> (A) ....,
>
> (B) ....,
>
> (C) That provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extend the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, deducting the payments under sub-paragraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.

11- Regarding Pre-Confirmation Adequate Protection, the Court in, In re Brown, 348 BR 583 (2006) state the following:

> BAPCPA was passed with the intent of preventing certain perceived abuses of the bankruptcy laws. Chapter 13 cases where a debtor might retain and use the vehicle subject to a security interest for several months, until the case came before the court for confirmation. Under per-BAPCPA, if the plan was not confirmed and dismissed, all the administrative expenses would be returned to the debtor. The secured creditor would not receive any of the payments and would be harmed by the amount of the uncompensated

depreciation of the creditor's collateral. The BAPCPA amendments to §1326(a) which require pre-confirmation adequate protection payments for certain secured creditors stop that abuse. Now, under BAPCPA, for certain secured creditors, the debtor must provide adequate protection for the period between for the filing and confirmation and if a plan is not confirmed and the case is dismissed, the creditor receives and keeps the adequate protection payments.

**B. On Post-Adequate Protection.**

12- Before the passage of BAPCPA, the Code did not explicitly treat the question of post-confirmation adequate protection, although secured creditors at any time could request relief from the automatic stay under §362 for cause including lack of adequate protection. BAPCPA dramatically changed this landscape. Section 1325(a)(5)(iii)(II) now explicitly requires post- confirmation adequate protection and further specifies that it must be in the form of money. As a result of this "new" provision, payments to secured creditors under the plan must always at least equal the amount of depreciation of the collateral. <u>In re Denton</u>, 370 BR 441 (Bkrtcy. S.D. Ga. 2007)

13- Lien retention in section 1325(a)(5)(B)(i) has been interpreted to require that payments through the plan must at least equal the depreciation in the value of the collateral during the repayment period. Not to be confused with adequate protection before confirmation or with the payment of the present value (interest) after confirmation, lien retention avoids constitutional problems through depreciation and used of the collateral by the debtor after confirmation. Put another away, even if the plan recites that secured holders retained liens, if the payments proposed by the plan are insufficient to stay ahead depreciation, the retained liens will erode faster

than the allowed secured claim paid ahead, contrary to the intent of section 1325(a) (5) (B) (1) Lundin, Chapter 13 Bankruptcy, 3rd. Ed Vol., Section 104.2, page 104-4; See In re Denton, id

14- Prior to BAPCPA, it was not uncommon for some chapter 13 plans to provide for balloon payments. Other form of backloading involved graduated or step-up payments plans, where the payments start up smaller and increased over the time. Secured creditors, particularly those secured by vehicle, viewed this unfair, exposing them to undue risk in light of the constant depreciation of their collateral. …In response to those creditor concerns, Congress enacted the equal payments provision and a companion version extending the concept of adequate protection, formerly a pre-confirmation requirement to post confirmation plan payments. 11 USC §1325 (a) (5) (B) (iii) (II) In re Erwin, 376 BR 897 (Bankr C.D. Ill 2007)

**C. Equal Monthly Payments.**

15- The Code provisions providing for the requirement for equal monthly payments states:

(a) Except as provided under subsection (b), the court *shall confirm* a plan *if* -

….

(5) With respect to each allowed secured claim *provided for by the plan* -

(A) The holder of such claim has accepted the plan;

(B) (iii) *if* -

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments ***shall* be in equal monthly payments**; and

(II) The **holder of the claim is secured by a personal property**, the amount of such payments ***shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan*.**

16-   In interpreting a statute, "courts must presume that a legislature says in a statute what it means and means in a statute what it says". In re Butler, 403 BR 5 (Bkctcy. W. D. Ark. 2009) *quoting* Connecticut Nat'l Bank vs. Germain, 503 US 249 (1992) Thus, when read together §1325(a)(5)(B)(iii)(I) and (II) merely requires the debtor to propose a plan that provides for payments to secured creditors to be maid monthly in equal amounts.   Further, if the creditor's claim is secured by a personal property, the proposed payments to the creditor cannot be less than the amount required to be provide adequate protection to the creditor. The purpose of the second part of this provision is to make sure that creditors whose claims are secured by personal property remain adequately protected during the period of the plan or until the creditors claim is paid in full. In re Butler, 403 BR 5 (Bkcy. 2009)

17-   Although, Courts may agree about the general purpose behind §1325 (a)(5)(iii)(I) and (II), the concept of periodic payments in relation to equal monthly payments has resulted, basically, in to line of cases which this Honorable Court may look into for an overall view of this issues-

- The first line of cases, find that the concept "periodic payments … in equal amounts" refer to ALL payments made on allowed secured claims after confirmation; and that does payments must begin with the trustee's first distribution under confirmed plan; and that does payments must begin with the trustee's first distribution under the confirmed plan. In re Denton, 370 BR 441, at 446 (Bkcy. S. D. Ga. 2007); In re Espinosa, 2008 WL 2954282 (2008); In re Williams, 385 BR 468 (2008); In re Sánchez, 384 BR at 578 (2008) According to these Courts, the periodic payments contemplated under the code refer to

all "regularly recurring post-confirmation payments on an allowed secured claim". Because the code states that the periodic payments shall be in equal monthly amounts, they conclude that all periodic payments after confirmation must be in equal monthly amounts.

- The second line of cases, find that equal monthly payments provision requires payments to be equal ONCE THEY BEGIN and to continue to be equal until the claim is paid in full. But, *that is so*, as their analysis concludes than after the amendment of BAPCA 2005, 11 USC §1326 (a)(1)(C) one of the "new" requirements under chapter 13 is the specific requirement that a debtor pay a secured creditor adequate protection post confirmation beginning not later than 30 days after the order of relief. In other words, adequate protection is required before and after confirmation of debtor's plan. In re Hill, 397 BR 259 (2007); In re De Sardi, 340 BR 790 (2006); In re Butler, 403 BR 5 (2009); In re Banderas, 328 BR 707 (2005); In re Pappas & Rose, 229 BR 815 (1998)

- These courts recognize that while administrative fees cannot be deferred, they do not need not be paid in full prior to the distribution to creditors under the plan. In re Banderas, 328 BR 707 (2005); In re Pappas & Rose, 229 BR 815 (1998) One court, even, has found that the payments after confirmation are in the nature of an administrative expense under §503 (b) (1) finding that actual, necessary costs and expenses of preserving the estate under §503 (b) (1) includes adequate protection payments.

18- To arrive to this conclusion, the Court, in the second line of cases, analyzed that: - the basis for post- adequate

protection payments under §1326 (a) (1) (C) under a chapter 13
case is that the debtor has the responsibility of making plan
payments for the benefit of ALL creditors.  In order, to meet
this obligation, the debtor usually must use the estate
automobile for the purpose of transportation to and from work.
Likewise, vehicles are use to for most families to buy basic
necessities such as food and clothing. Actual use of the vehicle
provides a direct benefit to the estate the form of continued
payments when the car is use to facilitate work. … In contrast,
the actual use of the vehicle provides a direct detriment to the
creditor with an interest in the vehicle. Actual use of a
vehicle causes depreciation. This depreciation in the actual
value of the collateral hurts a creditor's interest, if the
creditor is relying on the collateral to secure its claim. In re
De Sardi, 340 BR 790 (2006), quoting this principle as having
been articulated by the Supreme Court in, In re Timbers, 484 US
365 (1988). The De Sardi court then ruled …If attorney fees are
paid ahead of the adequate protection payments, then adequate
protection fails; the funds that provide the adequate protection
would be paid to someone besides the protected lender. In re De
Sardi, 340 BR at 801 (2006) arrived to this conclusion In
summary, the holder of a lien in an automobile has a protectable
interest; prior to- and after confirmation.

   **D. Priority Claims: attorney fees, trustee's administrative
        expenses & Post- Adequate Protection Payments.**

   19- Upon confirmation the code requires the trustee to pay
unpaid claims for administrative expenses allowed under
§507(a)(2), which refers to §503(b), and trustee's percentage
fee. 11 USC §1326(b) Section 503 (b) includes compensation
awarded under §330(a) which includes allowed attorney fees in a
chapter 13 case. The "new" provisions under §1326(b) requires:
These payments must be either before or at the same time as

payments to creditors under the plan…Presumptly, for these courts, the use of the word "or" in the phrase "before or at the time of each payment to creditors under the plan" does not allow flexibility in the payment of administrative claims at confirmation. Rather, it is to allow the payment of administrative claims that arise after confirmation and ongoing trustee percentage fees *concurrent* with the ongoing distribution to creditors. In re Butler, 403 BR 5 (Brcktcy W D Ark 2009) quoting cases prior to this amendment, and In re De Sardi, 340 BR at 808; See as well, In re Williams, 385 BR 468 (Bkrtcy S.D.Ga. 2008) (ruling that chapter 13 debtor's attorney that received some or all their fees through plan must construct plan so that the distribution to attorney do not threaten the availability of funds to make required equal installment payments to lienholders in amount sufficient to provide adequate protection after confirmation. 11 USC §1325(a)(5)(iii)(I, II)

20- Other courts find that the statute permits a court the option of "ordering complete payments of allowed administrative expense claims in front of other creditors, or ordering their payments at the time of payment to other creditors" In re Banderas 328 BR 707, 717 (Bankr W D Tex 2005) and In re Pappas & Rose, P C 229 BR 815, 820 (W D Okla. 1998) These Courts recognized that while administrative fees cannot be deferred, they do not have to be paid in full prior to the distributions under the plan…The requirement to pay administrative fees-either in full before or concurrent with payments to creditors- when read in conjunction with the requirements to make adequate protection payments within 30 days of filing, dictate that equal monthly payments may not necessary occur until sometime after confirmation…In the mean time, payment for the depreciation for the creditor's property is provided by adequate protection payments that *are required by the code*. Therefore, courts who

have found that equal monthly payments may not necessary occur until sometime after confirmation, they do so….arriving to the finding that adequate protection payments continue until the trustee is able to make the proposed plan payments. Accordingly, the priority of adequate protection payments in relation to administrative expenses has been addressed: - one, court has found that the payment of adequate protection payments after confirmation is in the nature of an administrative expense under §503(b) (1). In re De Sardi, 340 BR at 799 (finding that actual, necessary costs and expenses of preserving the estate under §503(b) (1) includes adequate protection payments.) The De Sardi court conclude that if adequate protection payments are necessary costs of preserving the estate under §503(b), and §507(a) (2) refers to "administrative expenses allowed under section 503(b)", then the §503(b) (1) administrative claims would have priority over the §503(b) (2) administrative claim, which includes the attorney fees. In that instance, the adequate protection payment would be paid prior to the remaining administrative fees. In re Dispirito, 371 BR 693 (Bkrtcy D.N.J. 2007) (ruling that adequate protection payments have priority over payments awarded to debtors counselor)

21. Furthermore, even prior to BAPCA 2005, in cases such as Lanigan, 101 BR 530, 533 (Bankr. N. D. Il 1986): courts ruled since 1986 that in cases where attorney fees proposes thinly funded plans:

> "There is no reason that has been addressed to this Court to show why the attorneys who present thinly funded plans should not share the risk of possible failure thereof and thereby be encouraged to scrutinize all plans even more closely. When plan payments are small and payment of fees out front will delay payments of creditors for many months, the sharing of risk and encouragement, the sharing of risk and encouragement of

more scrutiny will be served by spreading out payments of attorney's fees over the time, at least over the early months of the plan while debtor and creditors also get some benefit from monthly payments that apply partly to debts."

**E. Amount and/or Percentage of Adequate Protection to be Paid under the Plan.**

22- The new additions under the Code requires the chapter 13 plans ***must provide*** *to* ***secured claims personal security agreements intended to be paid through the chapter 13 trustee*** **equal monthly periodic payments** that ***equal at least an amount sufficient to provide secure creditor with adequate protection***. *Hon. William Houston Brown and Lawrence R. Ahern III, on 2005 Bankruptcy Reform Legislation Analysis*

23- Now, even after the enactment of BAPCA, under §1325 (a) (1) a plan must still comply with the provisions of chapter 13 on order to be confirmed. As stated, one of the "new" requirements under chapter 13 under §1326 (a)(1) is the specific requirement that a debtor pay to a secured creditor adequate protection beginning not later than 30 days after the order of relief. In other words, adequate protection is required before *and* after confirmation of the debtor's plan.

24- To that effect, title 11 USC §361 provides that when adequate protection is required under sections 362, 363, or 364 of this Title of an interest of an entity in property, such adequate protection may be provided by – (1) *requiring the Trustee to make a cash payment or periodic cash payments to such entity*, (2) by providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property, and (3) by granting such other relief.

25- Pertain to the applicable percentage and/or amount of adequate protection to be applied it has been ruled that …Actual use of the vehicle provides a direct benefit to the estate the form of continued payments when the car is use to facilitate work. … In contrast, the actual use of the vehicle provides a direct detriment to the creditor with an interest in the vehicle. Actual use of a vehicle causes depreciation. *This depreciation in the actual value of the collateral* hurts a creditor's interest, if the creditor is relying on the collateral to secure its claim. In re De Sardi, 340 BR 790 (2006), quoting this principle as having been articulated by the Supreme Court in, In re Timbers, 484 US 365 (1988). In summary, the holder of a lien in an automobile has a protectable interest; prior to- and after confirmation equivalent to the depreciation in the actual value of its collateral.

26- Even prior to BAPCPA 2005 courts already ruled that… Adequate protection by contrast affords the holder of a secured creditor compensation for any diminution in the value of the collateral *pending* confirmation of the plan. In re Cook, 205 BR 437 (Bankr N. D. Fla. 1997)

27- The case at caption was filed in the Bankruptcy Court for the District of Puerto Rico. Therefore, for an automobile located in the Commonwealth of Puerto Rico the applicable percentage of depreciation will be the one designated by the Government of Puerto Rico which is that of 1.66% monthly. In re Erwin, 376 BR 897 (Bankr C. D. Ill. 2007) quoting the De Sardi court, 340 BR 790, 809-10 (Bankr S.D. Tex 2006) ***as per a 1.50% applicable for depreciation to autos located in Texas.***

28- Likewise, the payments required under new Section 1326(a) (1) *are not conditioned that the lessor or creditor will first make a request or file a motion*. It is clear that unless the court orders otherwise, the payments under §1326 (a) (1)

must commence directly to the lessor or creditor within 30 days of the petition. See, Lundin, Keith M. Chapter 13 Bankruptcy, 3rd Ed. §426.1 (2000 & Supp 2007-1)

**F. Sufficiency Funding of the Plan.**

29- Likewise, too accomplish confirmation the debtor must as well evidence "to be able to make all payments under the plan and to comply with the plan". Feasibility, ***Keith M. Lundin on Chapter 13 Bankruptcy*** Feasibility is a fact-bound concept. At its simplest, feasibility requires that the debtor's income exceed expenses by an amount sufficient to make the payments proposed under the plan. *Id.* When the debtors' budget will not support the proposed payments into the plan, the plan is not feasible, and confirmation must be refused. *Id.*

30- It is the debtor's burden to proof that something more or different is going to happen after confirmation that will enable them *to fund* and/or comply with the schedule of payments as proposed.

31- It is the debtor's burden to proof that something more or different is going to happen after confirmation that will enable them *to fund* and/or comply with the schedule of payments as proposed.

**IV. PLEA.**

32- Movant standing is ascertained as it filed on June 28, 2016, a secure Lien claim holder on a personal security agreement with the outstanding debt of $15,559.78, under account no. 6604, on a Dodge Ram with a "replacement value"[2] under the

---

[2] (a) Amended Code Sections: §506 (a): Secured claims shall be determined under §506 (a) based on the replacement value of the collateral as of the date of the filing without deduction for cost of sale for cost of sale or marketing. 2006 Norton Quick - Reference Pamphlet: Bankruptcy Code and Rules: Summary of BAPCA
(b) "This amendment overturns those opinions that had permitted valuations based upon wholesale valuations, including the Supreme Court's *Rash* decision, by requiring retail values to be use in chapter 7 and 13, at least as to property acquired by the debtor for personal, family and household use. This retail value is to take into account the age and condition of the property at the time of value determination." DD.

Blue Book Suggested retailed value of **$20,100 under Clean Retail or $16,675 under Clean Trade - In.** *Clm Reg no. 1*

33- Under the plan dated June 21, 2016 Debtor(s) provide for the payment "in full" of Movant secure lien claim, with $120.00 dollars as pre- adequate protection; with the post-confirmation payments starting in the 25th month. This is unacceptable under BAPCPA 2005. *Bkcy Dck 2*

34- Movant content is that it is the holder of a secured lien claim duly perfected on a Dodge Ram, with a retail value on the Kelly Blue Book of $20,100 X 1.66% [*medium factor applicable for an American auto depreciation under clean retail*] = **$334, not $120.** And, with a clean trade - in value on the Kelly Blue Book of $16,675.00 X 1.66% [*medium factor applicable for an American auto depreciation under clean retail*] = **$277, not $120.** *See Exhibit A on Curriculum Vitae, Exhibit B on Depreciation values used in the Commonwealth of Puerto Rico, Exhibit C Depreciation Analysis applicable to this case, Exhibit D on Table of Distribution of Payments and Exhibit E on Sufficiency Analysis.*

33- For the reasons stated hereinbefore Movant does not accept the plan as proposed.

34- Even prior to BAPCA 2005, in cases such as Lanigan, 101 BR 530, 533 (Bankr. N. D. Il 1986): courts ruled since 1986 that in cases where attorney fees proposes thinly funded plans:

> "There is no reason that has been addressed to this Court to show why the attorneys who present thinly funded plans should not share the risk of possible failure thereof and thereby be encouraged to scrutinize all plans even more closely. When plan payments are small and payment of fees out front will delay payments of creditors for many months, the sharing of risk and encouragement, the sharing of risk and encouragement of

---

On Valuations: Hon. William Houston Brown and Lawrence R. Ahern III, on 2005 Bankruptcy Reform Legislation with Analysis. Pg. 69

(c) Merchant: the term merchant is defined as "One who is engaged in the purchase and sale of goods; a trafficker, a trader". *Fischbach Brewing Co. vs. City of St. Luis, 231 Mo. App. 793 95 S.W. 2d. 335.* Black's Law Dictionary

more scrutiny will be served by spreading out payments of attorney's fees over the time, at least over the early months of the plan while debtor and creditors also get some benefit from monthly payments that apply partly to debts."

35- Movant requests to be paid:

(a) A pre- adequate protection of $277 retroactively since the filing of the claim in June 28, 2016. *Clm 1*

(b) And, "equal monthly payments" after confirmation of $277 concurrently with attorney fees under 11 USC §1325 (a) (5) (B) (iii) and does not waive any other right under BAPCPA, and (c) the base of the plan to be increase for $381.24.

**WHEREFORE**, FIRSTBANK Puerto Rico is respectfully requested from this Honorable Court grant this motion.

**RESPONSE TIME NOTICE**

Within fourteen (14) days after service as evidenced by the certification, and additional three (3) days pursuant to Fed. R. Bankr. P. 9006 (f) if you were served by mail, any party against whom this paper has been served, or any party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's Office Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

Rule 9013-1 (h)

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY**, that on this the same day of the filing of this motion the a copy of this Motion its being sent by first class mail to the debtor(s) CARLOS MEDINA CENTENO, at the address on the docket, ALTURAS DEL TURABO 11, 14 STREET 600, CAGUAS, PUERTO RICO 00725; by the Bankruptcy CM/ECF System to the authorized address: - to the Debtor(s) counselor ROBERTO A FIGUEROA COLON, - Atty. Alejandro Oliveras Rivera, the Chapter 13 - US Trustee, - Atty. José Carrión Morales, the Chapter 13 - US Trustee and to all the creditor's in the List of Creditors

In San Juan, Puerto Rico, on the 9th of August, 2016

BY: /s/ María M. Benabe Rivera

María M. Benabe Rivera
Attorney for Movant - US - DC 208906
Maricarmen Colón Díaz - US - DC 211410
FIRSTBANK Puerto Rico
Centro de Servicios al Consumidor - Código 248
1130 Muñoz Rivera Ave., Rio Piedras, P R
PO Box 9146, San Juan, PR 00908-0146
maria.benabe@firstbankpr.com
(787)729-8135 / (787)729-8276

[Rev. 10/31/2014]

SIXTO R. LUGO SANTIAGO
S L ADVANCE ESTIMATE CORP.
TASADOR INDEPENDIENTE
CALLE AA # H-9
URB. CIUDAD UNIVERSITARIA
TRUJILLO ALTO, P.R. 00976
787-617-8515

TASADOR INDEPENDIENTE DESDE MARZO DEL 1997, ESTABLECI NEGOCIO PROPIO BAJO, S L ADVANCE ESTIMATE CORP. . DURANTE ESTOS AÑOS ME HE DEDICADO A LA INSPECCION DE DAÑOS A VEHICULOS DE MOTOR Y A LA VALORIZACION DE ESTOS PARA LA VENTA.

ESTUDIOS:

| | |
|---|---|
| FIRE INVESTIGATOR; NAFI # 12852 | SEPT. 2007 |
| UNIV. METROPOLITANA; BACHILLERATO, ADM. EMPRESAS | JUNIO 2007 |
| CHIEF TRAINING; STRUCTURAL DAMAGE ANALYSIS | DICIEMBRE 2006 |
| CERTIFIED PROFESSIONAL ESTIMATOR | SEPTIEMBRE 2006 |
| TECNICO EN ELECTRONICA. | |

SEMINARIOS: MITCHELL; ATS; ATSG; DUPONT; ASE; IASIU

EXPERIENCIA DE TRABAJO:

1990-1996 SNAP-ON TOOLS
GERENTE DE OPERACIONES
GERENTE DE VENTAS TECNICAS

1996-1997 ABC INFOTECH/MITCHELL
ENTRENADOR DE PROGRAMAS DE COLISION, VALORARIZACION, DIAGNOSTICO AUTOMOTRIZ

1997- TASADOR INDEPENDIENTE

DURANTE ESTOS AÑOS HE TRABAJADO COMO TASADOR, VALORARIZANDO DAÑOS Y PRECIOS DE VENTA DE UNIDADES, ESPECIFICAMENTE PARA EL BBVA, ESTUVE VALORARIZANDO LAS SUBASTAS DE UNIDADES DONDE EL MINIMO ERA DE SOBRE 100 UNIDADES DOS VECES POR MES. PARA FIRSTBANK Y DAIMLER-CHRYSLER ESTOY TASANDO UNIDADES LAS CUALES SE ENCUENTRAN EN LEY DE QUIEBRAS EN TRIBUNAL FEDERAL. HE REALIZADO PERITAJES DE TASACION EN DIFERENTES TRIBUNALES DE PAIS.

Exhibit A

SIXTO R. LUGO SANTIAGO
S L ADVANCE ESTIMATE CORP

PERITAJES DE TASACION:

TRIBUNAL DE ARECIBO
TRIBUNAL DE BAYAMON
TRIBUNAL DE CAROLINA
TRIBUNAL DE FAJARDO
TRIBUNAL DE RIO GRANDE
TRIBUNAL DE SAN JUAN
TRIBUNAL DE HUMACAO

CLIENTES:   COOPERATIVA DE SEGUROS MULTIPLES
BANCO BILBAO VIZCAYA
RELIABLE FINANCIAL SERVICES
EUROLEASE
GENERAL MOTORS CORP.
FIRSTBANK
CITIBANK
DAIMLER-CHRYSLER
ANTILLES INSURANCE COMPANY
COOP. VEGA ALTA
COOP. LOMAS VERDES
COOP. CAGUASCOOP
COOP. GUAYNABO

HOBBIES:   MECANICA, COMPUTADORAS;

CASO 1099-56445
MILTON HERNADEZ ADORNO
MAZDA PROTEGE DX 2003

| | |
|---|---|
| PRECIO DE CONTRATO COMPRAVENTA | **$14995.00** |
| PRONTO UNIDAD/TRADE IN | $ 3,500.00 |

| | |
|---|---|
| FECHA DE ASEGURADO | 31 DE MAYO 2003 |
| CONFISCACION | 27 DE NOVIEMBRE DE 2004 |
| **USO DE AUTO** | 1 AÑO, 6 MESES |

| | |
|---|---|
| PRECIO UNIDAD ASEGURADA | $14995.00 |
| DEPRECIACION CIA. SEGUROS; 15% BASADO EN 18 MESES | $3375.00 |
| PRECIO UNIDAD DEPRECIADA | $11620.00 |
| POSIBLES DAÑOS EN LA UNIDAD ESTIMADOS | $ 2500.00 |
| VALOR DE LA UNIDAD CUANDO CONFISCADA | $9120.00 |

TASACION UNIDAD AL MOMENTO CONFISCACION
BASADO EN 20% DEPRECIACION GOBIERNA APLICA.
$14995 - $4500 DEPRECIACION BASADA EN 18 MESES.

| | |
|---|---|
| PRECIO UNIDAD AL MOMENTO CONFISCACION: | $10495.00 |
| **PRECIO JUSTO MERCADO TASADO AL MOMENTO CONFISCACION.** | **$9000.00** |
| PAGO COMPAÑIA DE SEGURO | $10505.00 |
| **BLACK BOOK RETAIL 4/24/06** | **$10450.00** |



HAY PRECIOS COMPARATIVOS AL DIA DE HOY PARA INDICAR EL PRECIO ACTUAL, POR LO TANTO EL PRECIO UTILIZADO ESTA INCORRECTO. AGENCIA DE GOBIERNO NO REALIZO ESTIMADO DE DAÑOS DE LA UNIDAD PARA PODER DETERMINAR EL VALOR DE ESTOS Y BAJARLO DEL PRECIO AL DETAL DE LA UNIDAD SEGÚN EL BLACK BOOK DE ESA FECHA. SEGÚN CASOS TRABAJADOS ANTERIORMENTE LA AGENCIA DE GOBIERNO UTILIZA EL PRECIO DE MAYORISTAS PARA TASAR LA UNIDAD, EL CUAL ES MUCHO MAS BAJO, EN CONTRA DE CÓMO ES QUE SE ADQUIERE LA UNIDAD, QUE ES A PRECIO AL DETAL MAS LOS FLETES Y ARBITRIOS, QUE ES EL PRECIO EL CUAL SE ASEGURA LA UNIDAD AL MOMENTO DE LA COMPRA. SE UTILIZO COSTO PROMEDIO DE REPARACION DE HOJALATERIA Y PINTURA DE TODA LA UNIDAD POR LOS DAÑOS DE ESTA SEGÚN REPORTE DE CONDICIONES DE LA JUNTA.

NOTA: LAS FIGURAS FUERON REDONDEADAS A NUMEROS EXACTOS.

Sixto R. Lugo

SIXTO R. LUGO
TASADOR INDEPENDIENTE
787-617-8515

Black Book®
NATIONAL AUTO RESEARCH
Prices Effective: 04/24/2006
File
Products
Admin
Reports
FAQ
Abbrev.
Auctions
Market Matters

VIN: JM1BJ22543018

UVC:

VIN+UVC:

Year: 2003

Make: Mazda

Model: Protege

Series: DX - 2003

Style: 4D Sedan

2003 Mazda Protege DX - 2003 4D Sedan

State: Puerto Rico  Miles: 31940

Add/Deducts:

- [ ] Power Sunroof +$250
- [ ] w/o Auto Trans -$450
- [ ] w/o Factory Air -$900

Open Appraisal

New Appraisal

2003 Mazda Protege DX - 2003 4D Sedan

Download PDF Reader

VIN: JM1BJ225430189914

UVC: 2003540129

VIN + UVC: JM1BJ2253129

MSRP: $13,680

Loan Value: $7,920

Model Number: DX

Price Includes: AT AC

Finance: $198

Lease: $164

Mileage Cat: A

Weight: 2,687

Tire Size: 195/55R15

Wheelbase: 102.8

Taxable HP: 17.1

| Residual Months | Value |
|---|---|
| 12 | $5,975 |
| 24 | $4,675 |
| 30 | $4,200 |
| 36 | $3,725 |
| 42 | $3,275 |
| 48 | $2,850 |
| 60 | $2,050 |

**Black Book Wholesale**

| | Extra Clean | Clean | Average | Rough |
|---|---|---|---|---|
| Base | $8,850 | $8,350 | $7,400 | $6,000 |
| Options | $0 | $0 | $0 | $0 |
| Mileage Adj. | ($475) | ($200) | $0 | $0 |
| Total | $8,375 | $8,150 | $7,400 | $6,000 |

**Black Book Retail**

| | Extra Clean | Clean | Average | Rough |
|---|---|---|---|---|
| Base | $11,325 | $10,650 | $9,325 | $7,675 |
| Options | $0 | $0 | $0 | $0 |
| Mileage Adj. | ($475) | ($200) | $0 | $0 |
| Total | $10,850 | $10,450 | $9,325 | $7,675 |

**Black Book Trade-In**

| | Clean | Average | Rough |
|---|---|---|---|
| Base | $8,475 | $7,635 | $5,695 |
| Options | $0 | $0 | $0 |
| Mileage Adj. | ($200) | $0 | $0 |
| Total | $8,275 | $7,635 | $5,695 |

Copyright © 2006 Hearst Business Media Corp. ALL RIGHTS RESERVED.

Vehicle Pricing & Information
nadaguides.com 4/26/2006

Autos • Motorcycles • Boats • Classic Cars • Recreation Vehicles • Manufactured Homes

4-Door Sedan
2003 Mazda Protege'-4 Cyl. Sedan 4D DX

| | Average Trade-In | Average Retail |
|---|---|---|
| Base Price | $7,500 | $9,200 |
| Mileage 31,940 miles | $300 | $300 |
| TOTAL PRICE | $7,800 | $9,500* |

The free consumer values on nadaguides.com are based on the Consumer edition of the N.A.D.A. Official Used Car Guide ®, and should not be utilized for industry purposes. The consumer values may vary from the N.A.D.A. Official Used Car Guide values presented to you by insurance companies, banks, credit unions, government agencies and car dealers due to vehicle condition, regional market differences and frequency of updates.

**Average Trade-In**
An Average Trade-In vehicle should be clean and without glaring defects. Tires and glass should be in good condition. The paint should match and have a good finish. The interior should have wear in relation to the age of the vehicle. Carpet and seat upholstery should be clean and all power options should work. The mileage should be within the acceptable range for the model year. The "Average Trade-In" value is a national average calculated from the Official Used Car Guide's ten regions. The "Average Trade-In" value for your vehicle could be higher or lower than the national average due to your local market conditions.

**Average Retail Value**
An average retail vehicle should be clean and without glaring defects. Tires and glass should be in good condition. The paint should match and have a good finish. The interior should have wear in relation to the age of the vehicle. Carpet and seat upholstery should be clean, and all power options should work. The mileage should be within the acceptable range for the model year.

An Average Retail vehicle on a dealer lot may include a limited warranty or guarantee, and possibly a current safety and/or emission inspection (where applicable).

**Note:** Vehicles with low mileage that are in exceptionally good condition and/or include a manufacturer certification can be worth a significantly higher value than the Average Retail price shown.

©Copyright 2006 NADAguides.com. All Rights Reserved
©NADASC 2006. All Rights Reserved.

Kelley Blue Book
THE TRUSTED RESOURCE
kbb.com

80 years of trust

advertisement

Save with Blank Check loan APRs from:
NEW DEALER 5.59% USED DEALER 6.99% REFINANCE 6.79% Apply Now
CapitalOne auto finance

Quick Dealer Price Quote · Search Used Car Listings · List Your Car for Sal

HOME | NEW CARS | USED CARS | COMPARE NEW CARS | REVIEWS & RATINGS | ADVICE | FINANCING & INSURANCE

Home > Used Cars > 2003 > Mazda > Protege > DX Sedan 4D > Equipment

Print This Page

# 2003 Mazda Protege DX Sedan 4D

Trade-In Value

Private Party Value

Suggested Retail Value

Photo Gallery

Blue Book Review

Shopping Tools

Free CARFAX Record Check

Auto Loan from 6.65% APR

Get an Insurance Quote

Payment Calculator

Extended Warranty Quote

BLUE BOOK CLASSIFIEDS

Search Used Car Listings

Mazda

Protege

30 Miles or less

ZIP Code 00976

To View Ads, Click

SHOP FOR A NEW VEHICLE

Compare Used vs. New

$10,000 to $15,000

Both New and Used

Sedan

## BLUE BOOK® SUGGESTED RETAIL VALUE

| Condition | Value |
|---|---|
| Excellent | $10,110 (Selected) |

Suggested Retail Value Assumes Excellent Condition... More

More Photos

Estimated Payments
$ 203 /mo @ 7.39% APR

Get a Pre-Owned Loan from 6.65% APR

Your Credit Score for Free

Get a Free Insurance Quote

advertisement

An Invitation

## NEXT STEPS:

Search Local Listings

Get a CARFAX History Report

### Vehicle Details

Change Equipment

| | |
|---|---|
| Engine: | 4-Cyl. 2.0 Liter |
| Transmission: | Automatic |
| Drivetrain: | FWD |
| Mileage: | 31,940 |

### Selected Standard Equipment

| | | |
|---|---|---|
| Power Steering | AM/FM Stereo | Dual Front Air Bags |
| Tilt Wheel | Single Compact Disc | |

### Blue Book Suggested Retail Value

The Kelley Blue Book Suggested Retail Value is representative of dealers' asking prices and is the starting point for negotiation between a consumer and a dealer. This Suggested Retail Value assumes that the vehicle has been fully reconditioned and has a clean title history. This value also takes into account the dealers' profit, costs for advertising, sales commissions and other costs of doing business. The final sale price will likely be less depending on the vehicle's actual condition, popularity, type of warranty offered and local market conditions.

### Vehicle Condition Rating

Check Vehicle Title History

**Excellent** (Selected)

$10,110

To View List, Click 

View Another Vehicle

Select Year...

Select Make...

Select Model...

Or Search by Category

Or Change ZIP Code

"Excellent" condition means that the vehicle looks new, is in excellent mechanical condition and needs no reconditioning. This vehicle has never had any paint or body work and is free of rust. The vehicle has a clean title history and will pass a smog and safety inspection. The engine compartment is clean, with no fluid leaks and is free of any wear or visible defects. The vehicle also has complete and verifiable service records. Less than 5% of all used vehicles fall into this category.

* Puerto Rico 04/26/2006

**Blue Book Retail Value Assumes Excellent Condition**

This value assumes the vehicle has received the cosmetic and/or mechanical reconditioning needed to qualify it as "Excellent". This is not a transaction value; it is representative of a dealer's asking price and the starting point for negotiation.

# NEXT STEPS:

- Search Local Listings
- Get a CARFAX History Report

*Copyright © 2006 by Kelley Blue Book Co., All Rights Reserved. Mar-Apr 2006 Edition. The specific information required to determine the value for this particular vehicle was supplied by the person generating this report. Vehicle valuations are opinions and may vary from vehicle to vehicle. Actual valuations will vary based upon market conditions, specifications, vehicle condition or other particular circumstances pertinent to this particular vehicle or the transaction or the parties to the transaction. This report is intended for the individual use of the person generating this report only and shall not be sold or transmitted to another party. Kelley Blue Book assumes no responsibility for errors or omissions.(v.06038)*



Kelley Blue Book - Used Car Photo Gallery - Mazda, Protege

Page 1 of 3

Kelley Blue Book
THE TRUSTED RESOURCE
kbb.com

80 years of trust

advertisement

CapitalOne auto finance

Save with Blank Check® loan APRs from:
New Dealer 5.59% Used Dealer 6.99% Refinance 6.79% Apply Now

Quick Dealer Price Quote · Search Used Car Listings · List Your Car for Sal

HOME | NEW CARS | USED CARS | COMPARE NEW CARS | REVIEWS & RATINGS | ADVICE | FINANCING & INSURANCE

Home > Used Cars > 2003 > Mazda > Protege > DX Sedan 4D > Equipment

## 2003 Mazda Protege DX Sedan 4D

- Trade-In Value
- Private Party Value
- Suggested Retail Value
- **Photo Gallery**
- Blue Book Review

**Shopping Tools**

- Free CARFAX Record Check
- Auto Loan from 6.65% APR
- Get an Insurance Quote
- Payment Calculator

BLUE BOOK CLASSIFIEDS℠

**Search Used Car Listings**

Mazda

Protege

30 Miles or less

ZIP Code 00976

To View Ads, Click 

BLUE BOOK CLASSIFIEDS℠

**List Your Car For Sale**

Reach millions of shoppers on kbb.com, Cars.com, and other popular sites.

Find out more, Click 

### PHOTO GALLERY

Back Next

Back Next

**Exterior**

**Interior**

*Colors may not be available for all trims.*

NEXT STEPS: Search Local Listings · List Your Sedan For Sale

*Copyright © 2006 by Kelley Blue Book Co., All Rights Reserved. Mar-Apr 2006 Edition. The specific information required to determine the value for this particular vehicle was supplied by the person generating this report. Vehicle valuations are opinions and may vary from vehicle to vehicle. Actual valuations will vary based upon market conditions, specifications, vehicle condition or other particular circumstances pertinent to this particular vehicle or the transaction or the parties to the transaction. This report is intended for the individual use of the person generating this report only and shall not be sold or transmitted to another party. Kelley Blue Book assumes no responsibility for errors or omissions.(v.06038)*

**Finance & Insurance**

- Get a New Car Loan from 5.59% APR
- Get a Pre-Owned Loan from 6.65% APR
- Your Credit Score for Free
- Get a Free Insurance Quote

advertisement

Get an auto loan on your terms with a Blank Check

New Car APRs from 5.59%

New Dealer 5.59%
Used Dealer 6.99%
Refinance 6.79%
Person to Person 8.05%

http://www.kbb.com/kb/ki.dll/kw.kc.ucph?kbb.PR;;PR139;&00976&;077290&;;uer;&4;MA;D5 4/26/2006

advertisement

Save with Blank Check loan APRs from:
NEW DEALER 5.59% USED DEALER 6.99% REFINANCE 6.79% Apply Now
CapitalOne auto finance

Quick Dealer Price Quote | Search Used Car Listings | List Your Car for Sal

HOME | NEW CARS | USED CARS | COMPARE NEW CARS | REVIEWS & RATINGS | ADVICE | FINANCING & INSURANCE

Home > Used Cars > 2003 > Mazda > Protege > DX Sedan 4D > Equipment

## 2003 Mazda Protege DX Sedan 4D

Trade-In Value
Private Party Value
Suggested Retail Value
• Photo Gallery
Blue Book Review

**Shopping Tools**

Free CARFAX Record Check
Auto Loan from 6.65% APR
Get an Insurance Quote
Payment Calculator

BLUE BOOK CLASSIFIEDS
**Search Used Car Listings**

Mazda
Protege
30 Miles or less
ZIP Code 00976

**To View Ads, Click**

BLUE BOOK CLASSIFIEDS
**List Your Car For Sale**

Reach millions of shoppers on kbb.com, Cars.com, and other popular sites.

**Find out more, Click**

PHOTO GALLERY

Back Next

Back Next

**Exterior**

**Interior**

*Colors may not be available for all trims.*

NEXT STEPS: Search Local Listings
List Your Sedan For Sale

*Copyright © 2006 by Kelley Blue Book Co., All Rights Reserved. Mar-Apr 2006 Edition. The specific information required to determine the value for this particular vehicle was supplied by the person generating this report. Vehicle valuations are opinions and may vary from vehicle to vehicle. Actual valuations will vary based upon market conditions, specifications, vehicle condition or other particular circumstances pertinent to this particular vehicle or the transaction or the parties to the transaction. This report is intended for the individual use of the person generating this report only and shall not be sold or transmitted to another party. Kelley Blue Book assumes no responsibility for errors or omissions.(v.06038)*

**Finance & Insurance**

Get a New Car Loan from 5.59% APR
Get a Pre-Owned Loan from 6.65% APR
Your Credit Score for Free
Get a Free Insurance Quote

advertisement

Forged in the darkest recesses



NADA
GUIDES

Autos Motorcycles RVs Boats Classic Cars Manufactured Homes Store

NADAGUIDES CAR PRICES CAR RESEARCH TOOLS CAR DEALS COMPARE CARS

Search across any device
FIND YOUR PERFECT CAR ›
AutoTrader.com

Change Make > Change Year & Model > Change Trim > Change Mileage & Options > Values

# 2009 Dodge Ram 1500 Pickup-V8

Crew Cab Laramie 2WD

Compare to Other Cars

View Pictures (1)

Search across any device
FIND YOUR PERFECT CAR ›
AutoTrader.com

Values | Cars for Sale | Specifications | Pictures | Reviews & Ratings | Safety

Values | CPO Pricing | CPO Incentives & Deals | Cost to Own | Calculate Payments

## Values

Print

| | Rough Trade-In | Average Trade-In | Clean Trade-In | Clean Retail |
|---|---|---|---|---|
| **Base Price** | $13,900 | $15,425 | $16,675 | $20,100 |
| **Mileage (96,000)** | N/A | N/A | N/A | N/A |
| **Total Base Price** | $13,900 | $15,425 | $16,675 | $20,100 |
| **Options:** (change) | | | | |
| **Price with Options** | $13,900 | $15,425 | $16,675 X 1.66% = $277 | $20,100 X 1.66% = $334 |

**Search car listings & find the right car for you.** Click here for '2009 Dodge Ram 1500' local listings >>

### Vehicle History Report

Get answers to buy with confidence

- Check for accidents
- Confirm the reported mileage
- Get unlimited reports

Press GO or Enter VIN Submit

Powered by AutoCheck

### Car Buying & Selling Services

Sell your car now on AutoTrader.com
Free new car dealer quote
Get a free insurance quote provided by GEICO
Get pre-approved for an auto loan
Find incentives & rebates in your area

### Search Used Car Listings

Find 2009 Dodge listings for sale near you.

*Powered by AutoTrader.com* Submit

Next: CPO Pricing

Exhibit C

| AÑO | MESES | INFULL | SEGURO | PRIORIDAD | HON | HON |
|---|---|---|---|---|---|---|
| | | FB | FB | ASUME | SINDICO | ABOGADO |
| | | CLAIM 1 | | CLAIM 1 | | |
| | **2016 ENE** | | | | | |
| | FEB | | | | | |
| | MAR | | | | | |
| | ABR | | | | | |
| | MAY | | | | | |
| PLAN | JUN | | | | | |
| 1 | JUL | $120.00 | | | $50.00 | |
| 2 | AGO | $120.00 | | | $50.00 | |
| 3 | SEP | $120.00 | | | $50.00 | $990.00 |
| 4 | OCT | | | | $50.00 | $450.00 |
| 5 | NOV | | | | $50.00 | $450.00 |
| 6 | DIC | | | | $50.00 | $450.00 |
| 7 | **2017 ENE** | | | | $50.00 | $450.00 |
| 8 | FEB | | | $372.00 | $50.00 | $78.00 |
| 9 | MAR | | | $450.00 | $50.00 | |
| 10 | ABR | | | $450.00 | $50.00 | |
| 11 | MAY | | | $450.00 | $50.00 | |
| 12 | JUN | | | $450.00 | $50.00 | |
| 13 | JUL | | | $450.00 | $50.00 | |
| 14 | AGO | | | $450.00 | $50.00 | |
| 15 | SEP | | | $450.00 | $50.00 | |
| 16 | OCT | | | $450.00 | $50.00 | |
| 17 | NOV | | | $450.00 | $50.00 | |
| 18 | DIC | | | $450.00 | $50.00 | |
| 19 | **2018 ENE** | | | $450.00 | $50.00 | |
| 20 | FEB | | | $450.00 | $50.00 | |
| 21 | MAR | | | $450.00 | $50.00 | |
| 22 | ABR | | | $450.00 | $50.00 | |
| 23 | MAY | | | $450.00 | $50.00 | |
| 24 | JUN | | | $450.00 | $50.00 | |
| 25 | JUL | $95.22 | | $354.78 | $50.00 | |
| 26 | AGO | $450.00 | | | $50.00 | |
| 27 | SEP | $450.00 | | | $50.00 | |
| 28 | OCT | $450.00 | | | $50.00 | |
| 29 | NOV | $450.00 | | | $50.00 | |
| 30 | DIC | $450.00 | XXX | | $50.00 | |
| 31 | **2019 ENE** | $450.00 | | | $50.00 | |
| 32 | FEB | $450.00 | | | $50.00 | |
| 33 | MAR | $450.00 | | | $50.00 | |
| 34 | ABR | $450.00 | | | $50.00 | |
| 35 | MAY | $450.00 | | | $50.00 | |
| 36 | JUN | $450.00 | | | $50.00 | |
| 37 | JUL | $450.00 | | | $50.00 | |
| 38 | AGO | $450.00 | | | $50.00 | |
| 39 | SEP | $450.00 | | | $50.00 | |
| 40 | OCT | $450.00 | | | $50.00 | |
| 41 | NOV | $450.00 | | | $50.00 | |
| 42 | DIC | $450.00 | | | $50.00 | |
| 43 | **2020 ENE** | $450.00 | | | $50.00 | |
| 44 | FEB | $450.00 | | | $50.00 | |
| 45 | MAR | $450.00 | | | $50.00 | |
| 46 | ABR | $450.00 | | | $50.00 | |
| 47 | MAY | $450.00 | | | $50.00 | |
| 48 | JUN | $450.00 | | | $50.00 | |
| 49 | JUL | $450.00 | | | $50.00 | |
| 50 | AGO | $450.00 | | | $50.00 | |
| 51 | SEP | $450.00 | | | $50.00 | |
| 52 | OCT | $450.00 | | | $50.00 | |
| 53 | NOV | $450.00 | | | $50.00 | |
| 54 | DIC | $450.00 | | | $50.00 | |
| 55 | **2021 ENE** | $450.00 | | | $50.00 | |
| 56 | FEB | $450.00 | | | $50.00 | |
| 57 | MAR | $450.00 | | | $50.00 | |
| 58 | ABR | $450.00 | | | $50.00 | |
| 59 | MAY | $254.56 | | | $50.00 | |
| 60 | JUN | | | | $50.00 | |
| | | $15,559.78 | $0.00 | $7,926.78 | $3,000.00 | $2,868.00 |

Exhibit D

22-JULIO-2016

A : LCDA. BENABE
LCDA. COLON

DE : IVELISSE ROMERO ABRAHANTE

ASUNTO: 16-04961 MCF
CARLOS MEDINA CENTENO

**CONF. HEARING: 9-SEPTIEMBRE-16**

**RE: INSUFFICIENTLY FUNDED**
**TíTULO 11 USC 1325 (b)**

PLAN: 21-JUNIO-2016 BASE PROPUESTA: **$30,000.00**

| | | | | |
|---|---|---|---|---|
| VAL OF COL | | | $0.00 | |
| INFULL | FB | $ | 15,559.78 | CLAIM 1 |
| INFULL | | $ | - | |
| SEGURO: | | $ | - | |
| ATRASOS: | | $ | - | |
| ATRASOS: | | | $0.00 | |
| PRIORITY | ASUME | | $7,926.78 | CLAIM 2 |
| PRIORITY | IRS | | $988.56 | CLAIM 3 |
| ATTY. FEE: | | $ | 2,868.00 | RADICADO |
| Val. Collateral | | $ | - | |
| | | | | |
| **SUB-TOTAL** | | $ | 27,343.12 | |
| TRUSTEE FEE | | $ | 3,038.12 | |
| | | | | |
| **PLAN NECESITA ESTA BASE:** | | **$** | **30,381.24** | |
| | | | | |
| | | | | |
| | **SE QUEDA CORTO POR:** | | **$381.24** | |

**SE ANEJA MINUTA; DOCKET CLAIMS; DOCKET REGISTER.**

Exhibit e

Label Matrix for local noticing
0104-3
Case 16-04961-MCF13
District of Puerto Rico
Old San Juan
Fri Jul 22 14:11:07 AST 2016

US Bankruptcy Court District of P.R.
Jose V Toledo Fed Bldg & US Courthouse
300 Recinto Sur Street, Room 109
San Juan, PR 00901-1964

ASUME
PO Box 11218
San Juan, PR 00910-2318

ASUME-LAURA AVILES BIRRIEL
PO BOX 71316 SAN JUAN PR 00936-8416

Att Services
PO Box 192830
San Juan, PR 00919-2830

Cingular/at&T
AT&T/C/O Midland Bankruptcy
5407 Andrews Hwy
Midland, TX 79706-2851

Coop A/C Aguadilla
PO Box 541
Aguadilla, PR 00605-0541

Dish
9601 S Meridian Blvd
Englewood, CO 80112-5905

FIRST BANK
CONSUMER SERVICE CENTER
BANKRUPTCY DIVISION - CODE 248
PO BOX 9146, SAN JUAN PR 00908-0146

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Island Finance
PO Box 71504
San Juan, PR 00936-8604

LAURA ELISA AVILES BIRRIEL
EXT SAN ANTONIO ST 5 F35
CAGUAS PR 00725

Liberty Cablevision of PR
PO Box 192296
San Juan, PR 00919-2296

Midland Funding
2365 Northside Dr
San Diego, CA 92108-2709

(p)SPRINT NEXTEL CORRESPONDENCE
ATTN BANKRUPTCY DEPT
PO BOX 7949
OVERLAND PARK KS 66207-0949

Synchrony Bank
c/o of Recovery Management Systems Corp
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131-1605

ALEJANDRO OLIVERAS RIVERA
ALEJANDRO OLIVERAS CHAPTER 13 TRUS
PO BOX 9024062
SAN JUAN, PR 00902-4062

CARLOS MEDINA CENTENO
ALTURAS DEL TURABO II 14 CALLE 600
CAGUAS, PR 00725

MONSITA LECAROZ ARRIBAS
OFFICE OF THE US TRUSTEE (UST)
OCHOA BUILDING
500 TANCA STREET SUITE 301
SAN JUAN, PR 00901

ROBERTO ARISTIDES FIGUEROA-COLON
FIGUEROA & SERRANO, PSC
PO BOX 1635
GUAYNABO, PR 00970-1635

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Sprint
PO Box 4191
Carol Stream, IL 60197-4191

End of Label Matrix
Mailable recipients 19
Bypassed recipients 0
Total 19